Good morning, I'm here today upon the decision of the United States District Court for the Western District of Michigan, appealing that decision on behalf of Appellants, Liberty Life Insurance Company of Boston, and National Cities 12th Amended and Restated Welfare Benefits Plan. This is a case that involves a claim under ERISA for wrongful denial of benefits under Section 502A1B. We appeal that decision, and I'll take each major point in part. First, we appeal the decision on the basis of the standard of review applied, and second, we appeal the decision on the merits with respect to the administrative record before the administrator. First, with respect to the appeal concerning the standard of review, the court should have applied an arbitrary and capricious standard of review. According to the Supreme Court and Firestone, a de novo review applies to a review of an administrator's decision on the administrative record, unless the plan clearly has a clear grant of discretion to the plan administrator. Here the plan clearly does. It contains a grant of discretionary authority to the plan administrator. It empowers the plan administrator and its delegees with broad discretion to administer the plan, including deciding questions of eligibility and entitlement to benefits and interpreting and constructing the terms of the plan. And who's the administrator? Liberty Life Insurance Company of Boston is the claims administrator. The plan administrator is National City Corporation. So which one got the discretion in the language you were just talking about? The plan administrator, National City, received as the plan administrator has the discretion under the plan. However, it's permitted to engage entities such as Liberty Life Insurance Company or Liberty to assist with the administration of the plan. So it's conferred upon Liberty. So in your theory, it's National that has the discretion and they have Liberty exercising it for them? Yes. Yes. They've delegated to Liberty. But don't they have to affirmatively delegate that? So all that's required by the law is that the plan provide discretionary authority and that it permit delegation. And here the plan clearly does. How does, I'm confused, I'm thinking of Lee and Schein and Stanford, all of those, and I want to be sure I've got the language right, specifically say whether deference is due relies entirely on whether discretion has been expressly granted for the specific decision at issue. It sounds to me like you're saying because National City had discretion, Liberty automatically gets it. Is that your position? Well, our position is that it delegated to Liberty its discretion. And what Lee says is that all that's necessary is that the plan have a grant of discretionary authority and a permit delegation. Lee goes on to say... No, I mean, see, here's, I don't think it says and permit delegation. I think it says has the discretion, permit delegation and actually delegate. Are you saying that you don't have to have that third step? Well, what I'm saying is that they did so in this case. Okay. And what I'm saying... Tell me where. I know looking through these contracts is really kind of difficult to speak out loud, but tell me where in these contracts that discretion was actually delegated to Liberty. Well, in the plan, it permits Liberty to delegate to a named fiduciary and the named fiduciary shall have all the powers equivalent to the plan administrator of National City. And where does it delegate to Liberty named fiduciary stats? In the services agreement. You know, I don't want to put you at a disadvantage, but I'm looking, the services agreements are in Annex B-1 and B-2, correct? Correct. All right. So B-1 is short-term disability. Right. Correct. Okay. So short-term disability has claim services at the very beginning, I'm on 868, then it has a complete paragraph. Yes. I'm listening. Sorry. Okay. Thank you. Then it has a complete paragraph that says, Liberty shall assume the responsibility of the appropriate named fiduciary. Then it lays out how it accepts it. That's short-term disability. Yes. Look at Annex B-2, long-term disability. That entire paragraph is missing. There's no, as I can find, I'm happy for you to point it out to me, but all of that big paragraph under short-term disability is absent from Annex B-2, long-term disability. And the claims review on short-term disability, Section 5, also has a reference to fiduciary status. But Section 5 under long-term disability, page 875, also has no reference to a fiduciary under claims review. I'm not finding where in this contract that discretion has been passed to Liberty. Can you show me where it is? Yes. I just want to back up. I'll answer your question. On page 827, paragraph B under long-term disability, it talks about Liberty's agreed to assume the role of the appropriate named fiduciary. No, it says, I want to be sure that we're talking about the same language. It says that Liberty is neither the administrator, a fiduciary, nor a named fiduciary of the plan, except to the extent it has agreed to assume the role of appropriate named fiduciary under Annex B. Correct. And then if you turn to Annex B. That's where I was. And I see that short-term disability has named them, but I'm not finding it in the long-term disability agreement. Well, the long-term disability and what the law says, and I just want to back up a minute. What Lee said is there's no magical words. There doesn't need to be an express re-delegation, and nor does every duty need to be explicitly outlined. Those are what the cases say. And if you turn, and if you follow the principle of the law, the true principle of the law is that you don't need to have magical words. It doesn't need to be embodied in an agreement like the services agreement here. A person is, and ERISA provides as well, an entity is a fiduciary to the extent it exercises any discretion. And what the Condiob case specifically addressed was an instance like this where there wasn't such a disclaim in a service contract, because when you think about it, service providers could just throw their hands up and say, I'm not a fiduciary, I exclude myself from fiduciary status, and put such a clause in an agreement. Just so I'm not confused, I thought earlier you said that there needed to be an express delegation. Are you now saying that there does not have to be an express delegation as long as they're performing those duties? Yes, that's what I'm saying. And I, yeah, that's exactly what I said. So there doesn't have to be an express delegation. So basically you're going back to the idea that it's, get the parties right, that it's national that has the discretion, and liberty is exercising it. Exactly. And it's clear, I guess, that somebody's exercising it. Can national overturn the exercise of it? No, it did not. They cannot? They did not in this case. I'm going to ask if they did. Do they have the power to second guess that exercise of discretion? No, the agreement provides, the three parts of the agreement which the district court pointed out in the Togata projects. As to the agreement between whom? I'm sorry? Agreement between whom? Liberty and National City. So I can tell you I've represented National City and PNC for a long time and they do not overturn decisions of the administrator. But they have the power to, don't they? Isn't that what the agreement says? That is not. Look at claims processing paragraph two. All claims reported after delivery of a writing by Liberty, which is talking about writing and rejecting, will be processed and paid in accordance with the sponsor's interpretation as set forth in writing. Well, if you read the beginning of that, that only pertains to instances where by law the sponsor is required under ERISA to inform any administrator, any individual who's misinterpreting the plan in writing. That's all that pertains to. It seems to me you're arguing against your own position, though. It seems to me like the greater control that National has over Liberty, the more it makes sense to say that it's National's discretion that's being exercised. If you go back to what the case law is and what the plan document is, parceling out the service agreement, no courts have parceled out a service agreement in the manner that that's been parceled out. What about Michigan-affiliated health care? Absolutely. That was absolutely a case that's not on point. That's a case that involved a court determining for purposes of jurisdiction whether or not someone had a fiduciary status. But if it's determining fiduciary status, isn't that the question here? And didn't it say you can review? Wasn't it there exactly a comparable situation where a Liberty-type individual reviewed benefit claims and determined initial qualification but was found to have no discretion? No. The facts in that case are completely an opposite to this case. The court actually looked at the plan in that case, and the plan in Michigan-affiliated said that expressly was not a fiduciary. The plan did. And then what the administrator did in that case is they referred the decision. The court then looked at what the administrator actually did, and the administrator actually referred the decision back to the plan administrator. Here you have a plan that couldn't be more broad and fit within the context of the overwhelming majority of the law as to the discretion that it provides to not only the administrator but its delegates. And not only that, it has a very broad, very broad provision that allows National City to use Liberty in any manner it deems appropriate without forfeiting discretionary authority. And that's what the law says. But doesn't the claims processing contract that National City entered with Liberty say under claims processing paragraph 2, all doubtful claims will be referred to the sponsor for its determination of liability? With all due respect, that's exactly the type of analysis the case law and courts have said for courts not to do when they look at these provisions. You look at the plan, you look to see whether or not it contains a sufficient grant of discretionary authority, and if it permits delegation. It did in this case. So once again, you're back to if it permits it, that's good enough. Yes, it is. And in this case, like I said earlier, we've taken it a step far. Not only did the plan permit it, but out of abundance of caution, we also argued that Liberty actually exercised the discretion afforded to it by the plan. I see your time is up. Could I ask you to address briefly the Shelby County and the subsequent Hall case? I'm sorry? Shelby County? Yes. And Hall? Hall is a more recent case. Do you know which case I'm talking about? Yes. Right. That case is important because the claims administrator was acting as an agent, and the court explicitly held that that does not change the standard of review. So it's similar to our case because… Well, in Shelby County, this delegation theory wasn't applied, but in the later Hall case, it was applied. Is that correct? Yes. This case is like Hall, according to you? Yes, it is. But how are they different? I'm sorry? How are the cases different? They go in different directions. Shelby and Hall? Yeah. Well, so I think the common… I could tell you the common thread is that… Tell me what? The common thread amongst the case is… Well, the common thread doesn't help because they go in different directions. I want to know where they diverge. Well, you know, Hall… Or is one of them wrong? Well, you know, that's not up to me to decide, but I can tell you that with Hall, it was a prior similar version of this plan, and Liberty was the claims administrator. So Hall, just on its face, looks like you get… Is there any way Hall is different from this case with respect to delegation of discretionary authority? It's the same parties, isn't it? It's the same parties. It's a similar plan. It really is. I'm asking you, is there any way that it's different? Judging by the case, I can't tell. That's what I'm talking about. Is there anything when you read the case that indicates it's any different from this case? No, no. What about Shelby County? Is there any way that's different from this case?  No, I don't think so. So those cases are inconsistent? It's hard for me to tell with Shelby County because they didn't get into the facts. I mean, they really just talked about the principles of the law, which I do think are similar and can be invoked in this case, which are that the claims administrator can act as an agent, and ERISA permits named fiduciaries to delegate to persons… Is that essentially your argument today? Yes. The Hall argument? Yes. Thank you. Well, I have a question for you. With respect to the district court's decision to award benefits beyond March 17, I believe, what are the factual determinations that make that decision improper in your mind, going back to the Williams case in which I have a particular interest? Yeah. So with respect to the award of benefits, as you know, the cases have made distinctions about, particularly with respect to whether or not benefits were terminated, whether or not they were initially granted in the first place, and then they go on to make the distinction of whether or not, even in the cases where they're terminated, whether there's clear facts on the record to make a determination so that courts don't sit in the role of administrators in determining eligibility for benefits. Here, the Pelley was denied benefits before she even got into the Any Gainful Occupation Standard. So we argue that remand is appropriate because there has never been, although she was initially granted benefits under the own occupation standard, she was never granted under a different standard and essentially a different criteria for benefits. And we argue that the record has not been fully developed. It's not clear, at the very least, whether or not, you know, the court can sit. Let me back up. It's not clear whether or not she continues to receive benefits beyond that March 17, 2005. If the court thought that they had sufficient information on which to make that determination, they were just wrong. They were just wrong because there was no evidence in the record beyond that March 2010 date. Thank you. Thank you very much. Thank you. We have a question from your opposing counsel now. Thank you very much for the opportunity to be here today. I'm Troy Haney on behalf of the Appalee. Based upon the questions and answers thus far, I'd like to start out by addressing standard of review, but to do so very economically. There was significant back and forth about what generally the law is in terms of delegation. I think that regardless of what the law is on delegation, it is clear that terms of a plan must always be followed. Unless, of course, it was contrary to the law, but that's not an issue here. And the terms of this plan state very specifically that any delegation must be expressed, must be in writing, and as it's been pointed out very clearly, it's simply not there. Sometimes when we get these mammoth plans, and it always happens in the self-insured context, it's like putting together a jigsaw puzzle to try to sift the forest through the trees and figure out whether or not the delegation and all the other elements are there. And we were quite frankly surprised to see that the language in the STD and other parts of the plan just simply don't follow through to the long-term disability determinations. It's clear who the plan sponsor is. It's clear who the plan administrator is. It is clear that discretionary language is in the plan as to those entities. And it is equally clear that liberty is neither of those. And, in fact, as the plan makes clear, liberty is not actually even a fiduciary to the plan. How is it making the decisions, then? It's not validly making the decisions? The only proper role—no, it is not. The only proper role— So those decisions haven't been made, then? Well, decisions were certainly made, and my client has felt— They're operative, aren't they? Pardon me? The decisions are operative, right? I mean, they're treated as the decisions of national, right? They were in this case. The question is whether or not the review of those decisions would be de novo or arbitrary and capricious. I understand, but it seems like the thrust of your argument is that they didn't have the power to make these decisions because it wasn't delegated to them.  I mean, they made the decisions on behalf of national, right? Because of a contract which gave them the power to do that somehow, or else they wouldn't have done it. I agree. They certainly did make the— So they're acting as agents of national in some sense. They are acting as agents of national. So why doesn't the analysis in Hall apply then? Because in this particular case—and that's sort of where I began. In this particular case, if the discretionary portion of this plan is going to follow through to liberty, that discretion has to be delegated expressly and in writing, and that's specifically in the plan, and it specifically did not happen here. So while liberty can make decisions as to long-term disability determinations— But don't those decisions become the decisions of national until national overrules them? They do, but then the— Well, then it's national exercising the discretion. That's what I'm missing. That seems to be the logic of Hall. I understand it's in some tension with Shelby County, but it does seem to be the logic of Hall. That does seem to be the logic of Hall. What's the difference? But what we don't know about Hall is what the plan said. Which would suggest it didn't matter too much. Well, not necessarily. I mean, you can imagine circumstances where third-party claims administrators are making decisions and the plan administrator has the ultimate authority whether or not they're going to follow through with that decision or reject that decision, seek further review, and those types of determinations, if they're going to agree with— and there's nothing in the record to suggest that the plan administrator did any type of independent review of the facts or circumstances here. So if they're going to essentially— That would suggest that they delegated it then. Well, that they rubber-stamped a decision by liberty, then the question is whether or not that should be done over. That's within their discretion then. See, that's what I'm just—it just doesn't seem to hold together. I mean, if it's national's decision, it's the decision of national. They have somebody make it for them. They either give the total discretion to them to make it and they agree to be bound by it, or they reserve the right to change it if they want. Either way, it's their decision if liberty is acting for them. It seems to me is the argument of Hall. I'm not trying to make that argument. I'm just saying that seems to be what Hall is saying, is that somebody—it's just like if they hired Joe to make the decision. I mean, a company can't—or Jim or Jane, all right? Just somebody at random they hire to—or not at random. They'd hire an expert, I suppose, to do it for them. I mean, a corporation can't act without people acting for it, right? Certainly, and if that corporate person or person is within the corporation itself— Why should that make a difference for purposes of delegating or having someone do something for you pursuant to a contract? It's like an independent contractor is different from an employee? Isn't the distinction related to the purposes and division of authority under ERISA? Because when one is a named fiduciary or a fiduciary under ERISA, that entails a completely different concept of liability, does it not? And in that case, if what happens— I'm concerned about this conceptual basis of ERISA because fiduciaries owe the highest duty known to law under ERISA. Who is a fiduciary under ERISA matters incredibly to that person because it impinges on their liability. So if the argument is I have discretion and because I have discretion, anybody I tell to make the decision is now a fiduciary, somebody better be telling all those people because they are now liable under the provisions of ERISA as a fiduciary, which is a very different legal status from what occurs if you are merely performing a function on behalf of somebody else. So, you know, to me, I'm struggling with how this works because I'm looking at the documents, but I'm also struggling with this conceptual idea that you can just take named fiduciary status and willy-nilly give it to anybody who performs a service for you because that, to me, undermines the conceptual basis of the responsibilities, that allocation that ERISA sets up purposefully, which is why I'm looking for contractual language in which National City says I'm going to make you a named fiduciary and Liberty says I am willing to accept that responsibility and I am willing to stand liable under the provisions of ERISA. Now, is that not an important distinction? It most certainly is, and I think that's the import of the Michigan-affiliated case that you were discussing earlier, where courts are struggling to determine very specifically who in fact is a fiduciary in a particular situation governed by ERISA and who is not. And for the reasons I already discussed, if there is no express delegation, Liberty is not, but also because the plan makes clear expressly in writing that Liberty is not making any final decisions on benefit determinations, which by definition means they're not a fiduciary as well as to long-term disability determinations. Without knowing more about Hull, can it be perfectly reconciled here today? I don't know that I am capable of doing that, but it's clear what the mandates of ERISA are in terms of who is a fiduciary and how discretion is delegated to such a fiduciary. So how does that relate to the particulars of your client's case? Well, I think that my client prevails regardless of the standard of review, whether it's arbitrary and capricious or de novo. But I also agree with the conclusion of Judge Maloney that it's de novo in this particular case. And when you follow Judge Maloney's review of the medical evidence in the case, once he determined that it was de novo and then went on to determine who is objectively correct and to what degree is Ms. Gillespie disabled, I think he very logically, inaccurately, parses his way through the medical records, at times directing attention to the parties sometimes wanting to argue beyond what a particular medical record might say and bringing us back to what the medical records actually do say. And when reviewing the medical evidence on both sides, this case seems to be a case study where claimants are in a lose-lose situation. Ms. Gillespie, contrary to the universal comments of her doctors in the treaters where they say they do not think she should return to work, they do not think it would be good for her, they say she is not a candidate for further surgery. We have objective medical evidence supporting her medical conditions by MRIs and EMGs done after surgery which show that she has a surgical scarring and fibrotic buildup at the surgical site which is causing compression, and the EMG shows at that site radiating pain into the lower extremities. This is an unusual case where at the same time we don't have claims of psychological overlay or malingering or anything like that because this is a woman who, despite the way she feels and the way her doctors comment day to day to day on how she's feeling terrible, how there's objective verification for her subjective complaints, how it all makes sense, how she really isn't a surgical candidate any further. They don't want her on pain meds the rest of her life, but she might not have a choice. She opts to try to go back to work, and that gets held against her. And therein lies the conundrum for a claimant. If you don't try to go back to work, then you're a malingerer. If you do try to go back to work, then you're admitting that you're able to work. Obviously when she attempted to go back to work part-time, that didn't work for her. And I think what Judge Maloney very clearly determined, and this is why I say I think my client wins regardless of the standard of review, is that the transferable skills analysis is significantly flawed both times. There was Dr. Pontus, who was the original IME who actually saw my client for one short visit and then followed up with a transferable skills analysis that said she could go back and do some type of sedentary work, and they identified a couple positions without any comparative analysis taking into account what her actual objectively verified medical conditions and restrictions are, keeping in mind that both IME doctors, the record reviewer and the doctor that actually saw her, admit that she has permanent restrictions and concede her conditions because they have to in this case because they're objective in an MRI and EMG. But despite that, they find jobs that exist on an Internet search that are sedentary or sedentary light that they believe through this transferable skills analysis, which is just a buzzword for locating jobs that exist under the Department of Labor, or Dictionary of Occupational Titles, rather, and they just make the quantum leap from, well, she should be able to do some type of work, to she can do these jobs. And that's where Judge Maloney cited the Rabok case, which goes on to talk about the comparative analysis that's required. You can't just make that quantum leap without giving us the analysis as to why that particular job and the requirements of that job would fit with the residual functional capacity of a particular employment. And absent that analysis, any conclusion about what her job capacity is and the ability to do these jobs is fatally flawed. So for that reason, again, regardless of the standard of review, I think the appropriate decision was made here that she's entitled to her benefits. Now, whether or not remand would be appropriate or whether or not Judge Maloney has the authority to award benefits up to the date of his opinion is a related topic. Judge Maloney obviously felt that there was sufficient medical evidence in the record for him to determine whether or not, looking at this under the de novo standard, whether or not, in fact, Ms. Gillespie meets the definition of disability based upon all of the medical. And he, again, went through and recited all of the medical that we have in support of this claim, and it was in his sound discretion that he felt, in fact, she objectively does qualify as disabled under this particular policy. Now, ironically, every time we win an ERISA-governed long-term disability case for a claimant, it's tantamount to a remand because next month my client has to qualify again for benefits, and there's always that continuing obligation. So I never really understand the strife that we debate in terms of whether it's a remand or benefits are awarded. You're usually talking about a period of months, but ultimately, functionally, it is a remand because claimants have an ongoing obligation to substantiate their continuing liability. Well, it's not a remand to the district court. You mean it's a remand to the agents, to the administrator? Yes. I'm sorry. Yes, that's what Liberty is arguing in favor of is a remand back to Liberty so that they can do it again. And that's all I have unless there are any questions. Thank you. You can join us. You can place your materials. Just a couple quick points on the plaintiff's condition. The fact is when she was working, she was receiving appropriate treatment, and that allowed her to work. When she claimed that she was disabled as of July 1st, 2008, she stopped any appropriate treatment. My counsel does a better job explaining her medical records than her own doctors did. A key to her entitlement plaintiff's or Ms. Gillespie's entitlement to benefits is receiving appropriate treatment. Under the plan, it says that she cannot refuse to pursue or comply with appropriate treatment. And here, the same day that she claimed that she could no longer work, she went and saw Dr. Barrett, and he found that she tolerated treatments well. In fact, her records are replete with her tolerating her physical therapy treatments well, her chiropractic treatments, and her steroid injection treatments well. And you're talking about someone who went to six physical therapy appointments in three years, engaged in four steroid prescriptions or times that she visited her doctors for steroid injections. Six months after she stops those treatments, she claims that they weren't beneficial to her, and that was at the same time that she's not working. So the key here is, and what the plan provides, is that you can't say, I can't work and not try to receive appropriate treatment. Didn't Dr. Potnas, your doctor, reach the conclusion that the medical evidence supported what she said? No, what he found was that she did have some impairment, but that that impairment meant that she could perform sedentary work. She may not have been able to. He concluded that she may not have been able to perform her own occupation, but she certainly was able to perform any gainful occupation. And that's the standard that applies here. And you're talking about someone also who didn't see her doctors for months. She last saw Dr. Adams for primary care in August of 2008 and then did not go back to see him for nine months until May of 2009. So there's this time frame where she's not seeking treatment. She's not seeing her doctors. And even Dr. Adams said he's trying to talk about available options with her, and she's refusing them, and there's no explanation for that. She's just saying, I cannot work. And then you have Dr. Codwell, who she sees on only four occasions in over three years, twice for a flu, one for surgery clearance, and the last time because Liberty told her she needed to see a doctor. And he even says she doesn't need pain medication, she's got good motion, and that she's receiving Social Security disability, so therefore she must be unable to work. So getting back to the Shelby case, and to answer your question, Judge Rogers, that case is distinguishable because, like Michigan Affiliated, the plan itself expressly said that the claims administrator was not a fiduciary. So the plan document itself said that. And in addition, it also said, unlike the plan we have here, that the claims administrator was or the plan administrator was solely responsible for administering the benefits. And here you've got a very broad plan document that permits National City to employ persons to assist or agents or delegates to assist with administration of the plan. And it's not limited to just three entities that the district court outlined. An ERISA fiduciary, again, is a fiduciary to the extent that they exercise any discretion. And to Judge Straunch, to your point, that's really the analysis here, to your concern about pulling in people who may not know that they're a fiduciary. Well, ERISA explicitly says that to the extent you exercise discretion, you are a fiduciary. And that's the test. And here, if you look at what Liberty did, they did exercise discretion here. And you take that same position in light of Liberty's expressed denial in the contract language that it is neither the administrator a fiduciary nor a named fiduciary. So what you're saying is that you can contract with someone and agree contractually that they do not bear that responsibility and contract language can say that you oversee them and they're still a fiduciary. Two things, yes. Two things. Condi Up says, if you look at the Condi Up case, that disclaimers such as that do not insulate an entity from fiduciary liability. Secondly, with respect to the contract language, the plan actually says that Liberty is a named fiduciary to provide a full and fair review under Section 503 of ERISA. Show me where it says that. It's that same section you're reading on page... I'm sorry. I think we want to be really careful. I think it's the second day. It's the second page of the contract. Right. And I think we want to be really careful to be reading it. Yes. So why don't you tell me exactly where it is? It says it right in that paragraph. If you'd like, I can grab it. But it says that it is a named fiduciary for purposes of full and fair review under Section 503 of ERISA, in that very same paragraph. And courts have concluded that that language is enough to confer discretion on a claims administrator. That language alone... Why don't you pull it out? Sure. Because I'm not... What I'm seeing here is it's further understood that Liberty is neither the administrator, a fiduciary, nor a named fiduciary of the plan for purposes of ERISA, or any state law of a similar nature, except to the extent that it has agreed... That's it right there. Except to the extent... Well, except to the extent that it has agreed to assume the role of the appropriate named fiduciary under Section 503. Of ERISA, to provide a full and fair review... To provide a full and fair review... Of any denials of claims for benefits under the plan. And such agreement is specifically referenced in annex C. Yes. And they have. And courts have concluded that being a named fiduciary for purposes of full and fair review under Section 503 is sufficient to confer discretionary status. And I also just want to address the other portions of the agreement that were taken out of context. You say that it has to be that an agent of an administrator that... I'm sorry. An agent of someone in national's position, each agent has to be a fiduciary in order for the standard of review of arbitrary capricious to apply. No, I'm not, but I'm addressing... Well, you seem to be making the argument that it is a fiduciary and the issue is whether they're a fiduciary, but you also have the position that it doesn't matter whether they're a fiduciary. Right. Well, that's my initial position. It doesn't matter. But if you go beyond that and Judge Johnson... I just want to understand your argument. No, I'm sorry. I'm trying to address her concerns. But if you actually go get to that point, which you should never get to, but if you actually look at what the actual language is that is being pulled out of context, it says... So it's like a two-step argument. It's a two-step. It's a two-step argument. I think your time, though, is up unless you have further questions. No, we have a lot of cases today. Thank you. Thank you. Thank you. Interesting case. Thank you. Case will be...